# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

LOGISTEC USA, INC.,

       Plaintiff,

vs.

DAEWOO INTERNATIONAL
CORPORATION, and
DAEWOO INTERNATIONAL
(AMERICA) CORPORATION,

       Defendants.

       CV 213-027

## ORDER

Presently before the Court is a Motion for Summary Judgment filed by Defendant Daewoo International (America) Corp. See Dkt. No. 21. For the reasons stated below, Defendant's motion is **GRANTED**.

### PROCEDURAL BACKGROUND

Plaintiff Logistec USA, Inc. ("Logistec") filed a complaint against Defendants Daewoo International Corporation ("Daewoo Int'l") and Daewoo International (America) Corporation ("Daewoo America") seeking both damages as well as equitable relief on February 19, 2013. See Dkt. No. 1. Logistec asserted claims

1

against both defendants for breach of contract, promissory estoppel, equitable estoppel, breach of good faith and fair dealing, and attorney's fees. Id. Defendant Daewoo America moved for summary judgment on the claims pending against it on July 8, 2013. See Dkt. No. 21. Logistec filed a Motion for Voluntary Dismissal for Counts I, III, and IV pending against Daewoo America only. See Dkt. No. 38. This Court granted that motion (Dkt. No. 48), leaving the only claims pending against Daewoo America to be those of promissory estoppel (Count II) and attorney's fees (Count V).

## FACTUAL BACKGROUND

Daewoo Int'l and Logistec signed a contract ("the Agreement") on June 13, 2012. The Agreement specified that Daewoo Int'l would deliver woodchips in bulk to Logistec, which Logistec would receive and store. Dkt. No. 1-1, pg. 2, ¶¶ 2.00-2.03. Daewoo Int'l would pay Logistec in accordance with the agreement, which specifies:

> LOGISTEC shall charge DAEWOO and DAEWOO shall pay for contracted services according to the rate schedule attached to this Agreement as Appendix A. DAEWOO shall make payment or DAEWOO INTERNATIONAL (AMERICA) CORP, a subsidiary company of DAEWOO, having its principal office at 300 Frank W. Burr Blvd., Suite 23, Teaneck, NJ 07666 (herein referred to as "DWA"), on behalf of DAEWOO, may make payment but is under no obligation or duty to do so for DAEWOO.

2

<u>Id.</u> at pgs. 4-5, ¶ 4.00. The initial term of the Agreement commenced on October 1, 2012 and was scheduled to terminate on September 30, 2017. <u>Id.</u> at pg. 2, ¶ 1.00. The signatory parties were Daewoo Int'l and Logistec, as reproduced below.

THIS Storage and Handling Agreement ("Agreement") made this 7th day of June 2012, between LOGISTEC USA INC., having its principal office at 225 Newcastle Street, Brunswick, Georgia 31521 (hereinafter referred to as "LOGISTEC") and DAEWOO INTERNATIONAL CORPORATION, having its principal office at 84-11, Namdaemunno 5-ga, Chung-gu, Seoul, Korea (hereinafter referred to as "DAEWOO").

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first herein written.

LOGISTEC USA INC.

BY: *Frank Vanrelli*

TITLE: *Senior VP - Commercial & Business Develop.*

DATE: *June 12, 2012.*

DAEWOO INTERNATIONAL CORP

BY: Yeong Gyun

TITLE: Director.

DATE: June 13, 2012. 

<u>Id.</u> at pg. 1, 12.

3

A dispute arose about woodchip delivery, and Logistec never received payment. Dkt. No. 37-4, 66: 22-23. Daewoo Int'l contends that it did not deliver woodchips to Logistec because Logistec installed a trailer tipper that Daewoo Int'l deemed improper to perform Logistec's part of the Agreement. Id. at 27: 1-8.

Daewoo America is a wholly owned subsidiary of Daewoo Int'l. Dkt. No. 37, Exh. C, 23: 1-3. Daewoo America is involved in trading commodities, particularly steel and chemicals, between the United States and other countries. Id. at 23: 8-18. The relationship between Daewoo America and Daewoo Int'l is such that Daewoo America buys products and sells them to Daewoo Int'l, and vice versa. There are contracts between the two entities when business is conducted between them, but not when Daewoo America has separate business that does not pertain to Daewoo Int'l. Id. at 25: 8-18.

Jong Bae ("Bae") works as Assistant Manager for Daewoo America. Id. at 16: 1-2. Although he is not employed by Daewoo Int'l, he testified that he sometimes works as an agent for Daewoo Int'l. Id. at 17: 17-22. Bae played a role in negotiating the agreement with Logistec by speaking "on many occasions" about the terms of the Agreement to Frank Vannelli ("Vannelli"). Id. at 115: 1-24. Vannelli is the Logistec employee who

4

negotiated and signed the Agreement on behalf of Logistec. Dkt. No. 37, Exh. G, 167: 3-11. The discussions with Logistec representatives were by telephone and also email. Dkt. No. 37, Exh. C, 116: 2. Bae transmitted changes to Hyu Yang Han ("Han"), Manager of Raw Materials Team IV for Daewoo Int'l, but Bae did not have any responsibility in approving the Agreement on behalf of either Daewoo America or Daewoo Int'l. Id. at 154: 11-23.

Negotiations were conducted with the intention that Daewoo America would be the signatory on the Agreement with Logistec. However, in May 2012, Mr. Yoon, president of Daewoo America, told Bae that he was not comfortable with entering the wood chip business because it was risky. Id. at 28: 1-24. This decision was communicated to Han via email and verbally, and Han accepted the decision and sent written correspondence confirming that Daewoo Int'l would be the party executing the Agreement. Id. at 33: 17-25; Dkt. No. 37, Exh. F, ¶ 6. During the week of May 30 – June 6, 2012, Vannelli received specific notice via telephone that Daewoo Int'l would be executing the Agreement rather than Daewoo America. Dkt. No. 37, Exh. F, ¶ 5. It is undisputed that Daewoo Int'l and Logistec were the only signatories to the Agreement. It is further undisputed that Logistec was aware that only Daewoo Int'l would sign the contract and not Daewoo America. See id.

AO 72A
(Rev. 8/82)

Sugu Thuraisamy ("Sugu"), who created both CanKor Resources and Megahan to facilitate the supply of wood chips to Daewoo Int'l, served as an agent of Daewoo Int'l in negotiating the Agreement. Dkt. No. 37, Exh. C, 79: 17-21, 80: 8-15; Dkt. No. 59, Exh. C, 39: 13-25, 40: 1, 12-19, 42: 7-8, 22-25, 43: 1-11, 49: 14-15. Sugu testified that his role was to help Daewoo Int'l develop business. Dkt. No. 59, Exh. C, 42: 3-8.

The heart of Logistec's promissory estoppel claim against Daewoo America is that although Logistec realized that only Daewoo Int'l would sign the contract and although the contract specifically states that Daewoo America is not obligated to pay Logistec, Logistec decided to sign the contract and enter into the Agreement because Daewoo America "was to have a continued role (physically in the United States) in ensuring performance of Daewoo Int'l's obligations, including payment to Logistec." Dkt. No. 37, Exh. F, ¶ 5.

Vannelli affied, "Mr. Thuraisamy also represented to me that although Daewoo America would not be executing the Agreement, Daewoo America would specifically remain involved and have a consistent presence in the United States to facilitate and ensure performance of Daewoo Int'l's obligations under the Logistec Agreement." Id. Vannelli testified that if Logistec was uncomfortable signing with the parent company, Logistec could

6

have said no to the new arrangement. Dkt. No. 37, Exh. G, 168: 18-25. Vannelli emphasized the importance to Logistec that there was a physical presence in the United States to ensure delivery of the product as well as to facilitate payment. Dkt. No. 37, Exh. F, ¶ 7. Vannelli further noted that after the Agreement was signed, Sugu represented via telephone to Vannelli that "Daewoo America would be assisting and facilitating the performance of Daewoo Int'l's obligation to deliver woodchips to Logistec's facilities for shipment to Turkey." Id. at ¶ 8.

## LEGAL STANDARD

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could impact the outcome in a case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine only where the jury could issue a verdict in the nonmoving party's favor. Id. In determining whether summary judgment is appropriate, the Court will view the evidence "in the light most favorable to the opposing party." Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). The moving party bears the burden of showing a lack of genuine issue of material fact. Adickes, 389 U.S. at 157. The moving party should do so by identifying "particular parts of materials

7

in the record" which indicate "the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A). It is only after the moving party has fulfilled this burden that the party opposing summary judgment bears a burden of responding. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The nonmovant will defeat a motion for summary judgment by presenting evidence "such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

### DISCUSSION

All parties agree that Georgia law applies. According to Georgia law:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

O.C.G.A. § 13-3-44(a). "A promise is a manifestation of an intention to act or refrain from acting in a *specified* way, so made as to justify a promisee in understanding that a commitment has been made." Mooney v. Mooney, 538 S.E.2d 864, 868 (Ga. Ct. App. 2000) (quoting DPLM, Ltd. v. J.H. Harvey Co., 526 S.E.2d 409, 412 (Ga. Ct. App. 1999)).

AO 72A
(Rev. 8/82)

Promissory estoppel provides that in certain occasions, reliance by a party upon the promise of another is "sufficient consideration, in and of itself, to render the executory promise enforceable against the promisor." Kemira, Inc. v. Williams Investigative & Sec. Serv., Inc., 450 S.E.2d 427, 431 (Ga. Ct. App. 1994). "However, reliance alone does not a promise make; there must be something approaching a meeting of the minds, or a mutual understanding that a promise is being made upon which the promisee may reasonably be expected to rely." Foley Co. v. Warren Eng'g., Inc., 804 F.Supp. 1540, 1546 (N.D. Ga. 1992). Rather, under Georgia law, the Plaintiff must show that:

> (1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiffs to rely on such promise; (3) the plaintiffs relied on such promise to their detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiffs changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

Rental Equip. Group, LLC v. MACI, LLC, 587 S.E.2d 364, 367 (Ga. Ct. App. 2003)(citing Pabian Outdoor-Aiken, Inc. v. Dockery, 560 S.E.2d 280, 282 (Ga. Ct. App. 2002)).

For a successful promissory estoppel claim, "while the promise need not meet the formal requirements of a contract, it must, nonetheless, have been communicated with sufficient particularity to enforce the commitment." Mooney, 538 S.E.2d at

9

868. It is here, that Plaintiff's claim fails. There is no
evidence of a promise communicated with sufficient particularity
to enforce commitment. The most specific promise Plaintiff has
offered up deals with "remaining involved" and having a
"consistent presence in the United States" in order for Daewoo
America to do what the written contract specifically disavows—
ensure performance. No jury could ever find such overly general
terms as "remain involved" and "consistent presence" to be
particular enough to be capable of enforcement. The Eleventh
Circuit has explained that promissory estoppel has "no
application unless the evidence is clear and convincing and the
terms of the promise are definite." West Indies Network-I, LLC
v. Nortel Networks, (CALA) Inc., 243 Fed. Appx. 482, 485 (11th
Cir. 2007)(affirming district court's rejection of promissory
estoppel claim where alleged promise to secure equity financing
was not definite and certain). "Promissory estoppel 'does not
apply . . . to vague, indefinite promises.'" Jones v. White, 717
S.E.2d 322, 329 (Ga. Ct. App. 2011)(quoting Mooney, 538 S.E.2d
at 868. Further, "[p]romissory estoppel does not . . . apply to
. . . promises of uncertain duration." Lovell v. Georgia Trust
Bank, 734 S.E.2d 847, 865 (Ga. Ct. App. 2012)(quoting Georgia
Investments Int'l., Inc. v. Branch Banking and Trust Co., 700
S.E.2d 662, 664 (2010)); see also Iraola & CIA, S.A. v.

AO 72A
(Rev. 8/82)

Kimberly-Clark Corp., 325 F.3d 1274, 1281-82 (11th Cir. 2003)(affirming district court's dismissal of promissory estoppel claim where medical supply contract was for an "indefinite duration"). As an example, in Bridges v. Reliance Trust Co., the Georgia Court of Appeals affirmed summary judgment of a promissory estoppel claim because an alleged promise to make a loan that contained no specific interest rate or maturity date was too vague. 422 S.E.2d 277, 279-80 (Ga. Ct. App. 1992).

Even if there were a promise that was definite and clear, which there is not, justifiable reliable, too, is lacking. According to the Eleventh Circuit, "[i]t usually is unreasonable to rely on a substantial promise that has not been reduced to writing." Johnson v. Univ. Health Serv., Inc., 161 F.3d 1334, 1340 (11th Cir. 1998)(noting that reliance was unreasonable where conversations constituted ambiguous discussions of individual contractual terms, which did not amount to "a verbal exchange that even loosely resembled the making of a full contract"). While justifiable reliance is ordinarily a factual inquiry for a jury to resolve, necessarily, the plaintiff must provide some evidence that reliance was justified. In any event, it would be impossible to order compliance with an alleged promise so vague in terms, detail, and duration.

AO 72A
(Rev. 8/82)

In the present case, every alleged promise is of an extremely vague and indefinite nature, as well as of an uncertain duration. As noted above, under Georgia law, such promises are insufficient to support a promissory estoppel claim. Without evidence of a definite promise, Plaintiff's promissory estoppel claim fails as a matter of law. Consequently, summary judgment is granted on this claim.

## CONCLUSION

For the reasons stated above, Defendant's motion is **GRANTED**. The Clerk of Court is directed to enter the appropriate judgment.

**SO ORDERED**, this 27TH day of March, 2014.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)