# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

LOGISTEC USA, INC.,

        Plaintiff,

    v.

DAEWOO INTERNATIONAL
CORPORATION,

        Defendant.

CIVIL ACTION NO.: 2:13-cv-27

## O R D E R

This matter comes before the Court on several motions in limine. Specifically, Defendant Daewoo International Corporation ("Daewoo") has filed a Motion in Limine to Exclude Evidence (Doc. 98) and a Motion in Limine Regarding Plaintiff's Trial Exhibits (Doc. 103), which the parties have fully briefed (see Docs. 107, 114, 117, 120–21). In addition, Plaintiff Logistec USA Inc. ("Logistec") has filed three Motions in Limine—to Exclude Parol and Extrinsic Evidence as to the Meaning of the Term "Truck Tipper" (Doc. 99); to Exclude any Argument or Commentary by Defendant that the Agreement Was Subject to a Condition Precedent or Condition Subsequent (Doc. 100); and to Exclude Impermissibly Disclosed Documents and Similar Evidence Relating to Daewoo's Woodchip Procurement Costs, Analyses and Financial Losses It Sustained Following Its Termination of the Agreement (Doc. 101)—and Daewoo has filed a Response to each (Docs. 106, 110, 115). The Court held a hearing on these Motions on June 9, 2015. (Doc. 123.) For the reasons stated on the record at the hearing and as supplemented below, each of Daewoo's Motions (Docs. 98, 103) is **GRANTED in part** and

**DENIED in part**, and Logistec's Motions, respectively, are **DENIED** (Doc. 99), **GRANTED as unopposed** (Doc. 100), and **GRANTED in part** and **DENIED in part** (Doc. 101).

I.      **Daewoo's Motion in Limine to Exclude Evidence (Doc. 98)**

Daewoo moves the Court for an order prohibiting Logistic from offering any argument or evidence on certain enumerated matters at trial.  (Doc. 98, pp. 1–2.)  In particular, Daewoo lists eleven matters which it believes are inadmissible pursuant to the Federal Rules of Evidence, the Federal Rules of Civil Procedure, or Georgia law.  (See generally id.)  Logistec's Response asks the Court to deny Daewoo's Motion, because some matters are squarely admissible and others are not ripe for a ruling on admissibility at this time.  (See generally Doc. 107.)  In its Reply, Daewoo maintains that the Court should disregard Logistec's Response as failing to adhere to this Court's Local Rules regarding page limit and citations (Doc. 117, pp. 1–3), an error for which Logistec's Surreply attempts to demonstrate good cause and a lack of prejudice to Daewoo (see generally Doc. 120).

At the hearing, the Court informed the parties that it would consider the arguments in Logistec's Response despite noncompliance with the Local Rules' page limit, because Logistec had demonstrated good cause and a lack of prejudice for such error under the circumstances.  In addition, the Court invited oral argument on the eleven areas of contention raised by Daewoo's Motion.  With limited exception, the parties largely stood by the positions advocated in their briefs on each of the issues.  The Court's ruling on each of these matters is as follows:

   1. **Settlement Letters and Negotiations Between Logistec's Legal Counsel and Daewoo's Legal Counsel**

For the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **GRANTED in part** and **DENIED in part**.

Daewoo's Motion is **GRANTED** to the extent that the following items must be excluded from evidence in either party's case-in-chief, as they constitute discussions of compromise: letter from Foster Lindberg dated December 17, 2012; letter from Virginia M. Kittles dated December 31, 2012; letter from Ms. Kittles dated January 4, 2013; e-mail thread between Mr. Lindberg, Ms. Kittles, and John R. Ferrelle dated January 11, 2013, through January 14, 2013; letter from Mr. Ferrelle dated January 30, 2013; and letter from Mr. Lindberg dated February 6, 2013. (Doc. 98-43, pp. 1–8; Doc. 98-45, pp. 3–4.)

The Motion is **DENIED** in that the letters dated December 7, 2012, and January 25, 2013, are relevant and admissible, subject to the following redactions. (Doc. 98-43, p. 9; Doc. 98-45, pp. 1–2.) The December 7, 2012, letter from Ingrid Stefancic, if offered into evidence, must be redacted to exclude the final paragraph in its entirety—beginning with the phrase, "In light of the foregoing," and ending with, "without further notice." (Doc. 98-45, pp. 1–2.) Additionally, the January 25, 2013, letter from Mr. Lindberg will be admissible into evidence provided that the following language is redacted: "by March 17, 2013 (90 days from our December 17, 2012 letter to Ingrid Stefancic)." (Doc. 98-43, p. 9.)

**2. Lawsuits Involving Daewoo and Other Parties**

For the reasons stated on the record at the hearing, Daewoo's Motion is **GRANTED** insofar as Logistec may not offer any argument or evidence in its case-in-chief regarding Daewoo's lawsuits with other parties. As mentioned at the hearing, if Logistec believes at trial that this evidence has become relevant for rebuttal purposes, Logistec should raise the issue to the Court at that time. Logistec is advised to do so outside the presence of the jury, given the prejudicial nature of this evidence.

### 3. Settlements by Daewoo in Other Lawsuits with Other Parties

As the Court addressed Daewoo's settlements concurrently with its other lawsuits at the hearing, Daewoo's Motion as to its settlements is **GRANTED**, subject to the same qualifications and instructions discussed above in Subpart I.2.

### 4. Termination of Contract Between Megahan International LLC ("Megahan") and Daewoo International (America) Corp. ("Daewoo America")

Having taken the admissibility of this evidence under advisement at the hearing, this issue warrants further discussion here. The general test for the admissibility of evidence is that relevant evidence is admissible unless a constitutional, statutory, or other rule specifically provides otherwise. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Civ. 401.

While Daewoo highlights the differences between the Megahan-Daewoo America contract and the Logistec-Daewoo agreement in this case (Doc. 98, pp. 14–16), the Court is persuaded by Logistec's argument that this evidence is relevant to its allegation of contrived excuse (Doc. 107, p. 7). Logistec alleges that Daewoo, upon realizing that it had a flawed procurement plan for shipping woodchips and that market conditions were more favorable in Jacksonville, Florida, than at Logistec's facility in Brunswick, Georgia, relied on Logistec's purchase of a trailer tipper as an excuse to terminate the agreement and move its shipping operations to Jacksonville, Florida. (Id. at pp. 6–7 n.2.) Logistec contends that Daewoo America's execution and termination of the Megahan contract on behalf of Daewoo in Jacksonville, Florida, evidence a shifting of plans and further procurement issues, supporting its allegation of contrived excuse. (Id. at pp. 7–8.) In any event, the Court finds that the

circumstances surrounding the execution and termination of the Megahan-Daewoo America contract would tend to make Logistec's theory of contrived excuse more or less probable.

Furthermore, because the Court determines <u>infra</u> that the subject of Daewoo's costs in Jacksonville, Florida, is admissible, the Megahan-Daewoo America contract also may be relevant for rebuttal purposes. <u>See</u> Subpart IV.1. Thus, because this evidence is relevant and admissible, this portion of Daewoo's Motion is **DENIED**.

### 5. Bankruptcy Action Filed by Daewoo GTL (America) Corp.

Logistec represented at the hearing that it does not intend to make any argument or introduce any evidence on this matter. Consequently, Daewoo's Motion to this end is **GRANTED as unopposed**. Daewoo GTL (America) Corp.'s bankruptcy action must be excluded from argument and evidence at trial.

### 6. Sugunthan Thuraisamy's Canadian Case

For the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **GRANTED as unopposed**. Sugunthan Thuraisamy's Canadian case will not be admissible at trial.

### 7. Logistec's Alleged Damages for Lost Profits of Its New Venture into the Woodchip Business

For the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **DENIED**. As stated at the hearing, this ruling does not foreclose Daewoo from raising these arguments at trial, including through a motion for judgment as a matter of law. Fed. R. Civ. P. 50. However, a "motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried." <u>Variable Annuity Life Ins. Co. v. Laeng</u>, No. 8:12-CV-2280-T-33, 2013 WL 3992418, at *2 (M.D. Fla. Aug. 2, 2013). Consequently, the Court will not dispose of Logistec's claim for lost profits on a motion in

limine.  As this claim is still in the case, Logistec will be allowed to present evidence to support it.

### 8.  Logistec's Alleged Damages for Capital Expenditures and Lost Profits

Similarly, and for the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **DENIED**.  Again, a motion in limine is not the proper vehicle to raise a dispositive issue.  Daewoo may advance the substantive arguments it raises in this portion of its Motion to the Court and the jury at trial.  However, at this stage, evidence of Logistec's alleged damages for capital expenditures and lost profits remains relevant and admissible.

### 9.  Logistec's Alleged Punitive Damages

For the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **DENIED**.  Daewoo argues in its brief, and emphasized at the hearing, that the Court should consider this dispositive issue because Logistec failed to include its claim for punitive damages in the Pretrial Order.  (Doc. 98, p. 28.)  The Court agrees that Logistec has not provided any reason why it omitted this claim from its portion of the Pretrial Order.  However, the Court does not find that Daewoo has been prejudiced by this omission, as it has been aware that Logistec seeks punitive damages since the commencement of this case.  (Doc. 1, pp. 7–8, 10.)  Indeed, Daewoo included arguments against punitive damages in its portion of the Pretrial Order. (Doc. 92, p. 13.)

Where there has been no prejudice from an omission in the pretrial order, courts generally allow parties to amend the pretrial order to include the omitted matter.  See United States v. Varner, 13 F.3d 1503, 1507–08 (11th Cir. 1994) ("There is a presumption that a pretrial order will be amended in the interest of justice and sound judicial administration provided there is no substantial injury or prejudice to the opposing party or inconvenience to the court.");

<u>Crimson Yachts v. M/Y Betty Lyn II</u>, No. CIV.A. 08-0334-WS-C, 2010 WL 3306940, at *1 (S.D. Ala. Aug. 19, 2010) (holding that defendant should be allowed to amend pretrial order to include omitted counterclaims where "[t]he plaintiff has long known of the omitted claims and has in fact prepared to defend against them at trial").

Given that Daewoo has not made any showing as to how it has been prejudiced by Logistec's omitting its claim for punitive damages from the Pretrial Order, the Court will allow Logistec to amend the Pretrial Order to include its claim for punitive damages. Logistec is hereby **ORDERED** to file and serve **on or before June 22, 2015**, a brief addendum to the pretrial document setting forth its claim for punitive damages.

Evidence regarding punitive damages is relevant and will be admissible at trial. However, the determination of punitive damages will be bifurcated. <u>See</u> O.C.G.A. § 51-12-5.1(d). Accordingly, during the first phase of the trial, in addition to offering evidence on liability and damages for Logistec's claims for breach of contract, implied covenant of good faith and fair dealing, and attorneys' fees, the parties may offer evidence on liability for punitive damages but not the amount of such damages.[1] In the event that liability for punitive damages is found in the first phase of the trial, the parties may then present evidence regarding the amount of punitive damages to be awarded during the second phase of the trial.

**10. Logistec's Allegation of Contrived Excuse**

For the reasons stated on the record at the hearing, this portion of Daewoo's Motion is **DENIED**. Daewoo has had proper notice of Logistec's defense of contrived excuse. Moreover,

---

[1] In its portion of the Pretrial Order, Daewoo requests further division of the issues. Specifically, it requests that the jury first determine whether Plaintiff's breach of the agreement was material before addressing other matters. (Doc. 92, p. 45.) This issue is not before the undersigned and is better addressed by the trial judge. Therefore, the undersigned issues no opinion on this request in this Order. Additionally, as noted in Subpart I.11, the parties may address with the trial judge whether Logistec's claims for attorneys' fees should be bifurcated.

Daewoo cannot argue that Logistec failed to produce the documents in support of this defense, as those documents were in Daewoo's possession. Accordingly, evidence supporting Logistec's allegation of contrived excuse is relevant and will be admissible at trial.

**11. Logistec's Claim for Attorneys' Fees Under O.C.G.A. § 13-6-11**

The Court took the issue of the admissibility of Logistec's claim for attorneys' fees under O.C.G.A. § 13-6-11 under advisement at the hearing. Section 13-6-11 provides that "expenses of litigation generally shall not be allowed as a part of the damages," except that a jury may award such damages where specially pleaded by a plaintiff against a defendant who "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A § 13-6-11.

Logistec specially pleaded its prayer for attorneys' fees in the Complaint. (Doc. 1, ¶¶50–51.) Daewoo's Second Request for Production of Documents sought "[a]ll documents and electronically stored information regarding Logistec's claim for interest, costs, punitive damages and attorneys' fees as a result of [Daewoo's] alleged bad faith conduct." (Doc. 98-5, p. 7.) As Daewoo contends, and Logistec does not dispute, "Logistec has not produced any legal bills, invoices, statements, or other items to support an attorneys' fees claims. Logistec has not identified a person who will seek to present evidence on the issue." (Doc. 98, p. 38.)

As an initial matter and as laid out in Subpart I.7 above, a motion in limine is not the proper method for seeking dispositive relief on the substance of a claim. Thus, Daewoo's argument that Logistec is not entitled to attorneys' fees because "Daewoo did not enter into its contract with Logistec in bad faith" (id.) is **DENIED**.

However, Daewoo argues that evidence regarding Logistec's attorneys' fees is not admissible, because Logistec failed to respond to Daewoo's request for the production of these

documents, and failed to furnish an expert witness report, as required under Federal Rule of Civil Procedure 26 ("Rule 26").  (Id.)

As previously stated, relevant evidence is admissible unless some constitutional, statutory, or other rule provides otherwise.  Fed. R. Evid. 402.  Significant here is that Federal Rule of Civil Procedure 26 ("Rule 26") requires a party to make several disclosures at the outset of discovery, including a copy of all documents that the party has in its possession and may use in support of its claims or defenses.  Fed. R. Civ. P. 26(a)(1)(A)(ii).  Rule 26 further states that a party must disclose, at a time set by court order, the identity of any expert witness it may use to present evidence at trial and a written report from such expert.  Fed. R. Civ. P. 26(a)(2)(A)–(B), (D).  If a party learns that the information in its initial or expert witness disclosures is incomplete or incorrect, the party must supplement those disclosures in a timely manner.  Fed. R. Civ. P. 26(a)(2)(E); Fed. R. Civ. P. 26(e)(1)(A).

The failure to properly disclose or supplement under Rule 26 subjects a party to sanctions under Federal Rule of Civil Procedure 37 ("Rule 37"):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).  A failure is "substantially justified" when there is a "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request."  Ellison v. Windt, No. 6:99-CV-1268, 2001 WL 118617, at *2 (M.D. Fla. Jan. 24, 2001) (quoting Chapple v. Alabama, 174 F.R.D. 698, 701 (M.D. Ala. 1997)).  A failure is "harmless" when there is "no prejudice to the party entitled to the disclosure."  Id. (quoting Chapple, 174 F.R.D. at 701).  The burden of proving a substantial justification or harmlessness rests on the party who failed to appropriately disclose or

supplement. <u>Chapple</u>, 174 F.R.D. at 701 n.3 (citing <u>Nguyen v. IBP, Inc.</u>, 162 F.R.D. 675, 680 (D. Kan. 1995)).

In <u>Tindall v. H & S Homes, LLC</u>, the Middle District of Georgia considered the defendants' motion in limine to exclude the testimony of the plaintiff's counsel regarding attorneys' fees under O.C.G.A. § 13-6-11, based on its late disclosure in violation of Rule 26. No. 5:10-CV-044 CAR, 2012 WL 3637745, at *1 (M.D. Ga. Aug. 22, 2012). The Court denied the defendants' motion to the extent that it found the testimony to be relevant and admissible but granted the motion insofar as the defendants were given leave to conduct additional discovery on this matter. <u>Id.</u> at *2. The court reasoned that although the reasonableness of attorneys' fees is a matter for expert opinion requiring expert disclosure and an expert report under Rule 26, the plaintiff's failure to comply with that rule was substantially justified and harmless. <u>Id.</u> at *1. The failure was substantially justified, the court explained, because it was reasonable for the plaintiff's counsel to assume that the defendants were aware of their intent to testify and that they did not need to make a disclosure under Rule 26, given that the substantive claim for attorneys' fees appeared in their complaint and that such testimony is the usual practice in state court. <u>Id.</u> at *1–2. The court further noted that the defendants would not be prejudiced by the late disclosure, because the plaintiff's attorneys were not previously in a position to provide detailed expert reports that would reflect their trial testimony and an accurate accounting of expenses but could do so prior to the second phase of trial with enough time for the defendants to review the same. <u>Id.</u> at *2.

Like the plaintiffs in <u>Tindall</u>, Logistec believes that it provided adequate notice to Daewoo that its counsel intended to testify to attorneys' fees, because the claim for attorneys' fees was "pending since the inception of this case more than two years ago" and Logistec's

attorneys were identified as witnesses in the Pretrial Order and the final Trial Witness List. (Doc. 107, pp. 20, 26.) Logistec further argues that it could not have provided an expert report as to attorneys' fees before those fees were incurred, and that Daewoo will be able to review any evidence of fees before Logistec offers testimony as to those fees during the damages phase of trial. (Id. at p. 26.)

Logistec's arguments are consistent with those of the plaintiffs in Tindall, and, like the court in that case, this Court is satisfied that those arguments establish the substantial justification and harmlessness necessary for the admission of the attorneys' fees evidence in this case. The narrowness of this issue, as well as the limited amount of witnesses and documentation needed to prove it, support this finding. The evidence that Logistec intends to offer regarding liability for attorneys' fees is the same evidence that it has already produced regarding its other claims. As to the amount of fees, there is sufficient time prior to the trial of this case for Daewoo to review Logistec's counsel's records and to assess the reasonableness of Logistec's claimed fees.

Thus, Daewoo's Motion to exclude evidence of attorneys' fees is **DENIED**, as this evidence is relevant and admissible.[2]

However, any expert testimony offered in support of Logistec's claim for attorneys' fees must come from its own counsel, not an outside witness, given the delay in this disclosure. To the extent that Logistec intends to offer the testimony of its counsel, Logistec is **ORDERED** to

---

[2] The parties may request that, like the court in Tindall, the Court bifurcate the amount of attorneys' fees in this case from the issue of liability for attorneys' fees. The amount of Logistec's attorneys' fees would then not be admissible in either party's case-in-chief and instead be reserved for the second phase of trial if the jury found that Logistec was entitled to fees during the first phase. However, bifurcation is an issue better decided by the trial judge, and, therefore, the undersigned offers no opinion on bifurcation of the attorneys' fees claim. If either party requests bifurcation of attorneys' fees, it should raise the issue well in advance of trial.

supplement its expert witness disclosures to identify each of its attorneys who may testify and to produce written expert reports for the same **on or before June 29, 2015**.

Furthermore, Logistec is **ORDERED** to turn over its attorneys' billing statements, attorneys' fees invoices, and any other documents it intends to offer regarding its claim for attorneys' fees **on or before June 29, 2015**, and to supplement such disclosure with updated records **on August 3, 2015**.[3]  If Daewoo's counsel wishes to depose Logistec's counsel regarding the amount or reasonableness of its fees, Logistec's counsel must make themselves available for deposition at Daewoo's counsel's office **no later than July 24, 2015**.

Additionally, the Court gives Daewoo leave to name its own expert to contest the reasonableness of Logistec's attorneys' fees.  This testimony can come from Daewoo's counsel or an outside witness.  If Daewoo intends to offer such an expert, it must supplement its expert witness disclosures to identify the expert who may testify and produce a written expert report for the same **on or before July 13, 2015**.  If Logistec seeks to depose this expert, Daewoo must make the expert available for deposition at Daewoo's counsel's office **no later than July 24, 2015.**

**II.     Logistec's Motion in Limine to Exclude Parol and Extrinsic Evidence as to the Meaning of the Term "Truck Tipper" (Doc. 99)**

Logistec avers that the Court should exclude any parol and extrinsic evidence and witness testimony regarding the meaning of the term "truck tipper" at trial.  (Doc. 99, p. 1.)  Logistec reasons that the Court considered this evidence and decided the intended meaning of the term "truck tipper" in ruling on the issue of breach at the summary judgment phase.  (Id. at p. 3.)

---

[3]  The updated records should contain evidence of fees incurred from the date of the first production up to the second production on August 3, 2015.  Logistec may, of course, redact from its billing statements and invoices all information subject to attorney-client privilege or work-product protection.  However, Logistec must ensure that the redactions are not so extensive that Daewoo cannot assess the reasonableness of the fees.  In particular, Logistec should endeavor to ensure that the documentation reveals the claims to which the respective fees are attributable.

Relying on Federal Rules of Evidence 401, 402, and 403, Logistec argues that evidence as to the meaning of "truck tipper" is inadmissible, because it is irrelevant to the only remaining issue— the materiality of the breach—and would be cumulative, confusing to the jury, and a waste of judicial resources. (Id. at p. 4.) Opposing Logistec's Motion, Daewoo argues that a jury cannot assess the materiality of a breach without considering the full circumstances of the transaction, and that the evidence at issue "is inextricably intertwined with the performance of the device and the parties' intent." (Doc. 106, p. 2.)

For the reasons stated on the record at the hearing, Logistec's Motion is **DENIED**. The record evidence concerning the meaning of the term "truck tipper" is relevant to the issue of materiality, as noted in this Court's Order on summary judgment. (See Doc. 91, p. 24.) Notably, this evidence is admissible only to prove materiality and may not be introduced to prove the meaning of the term "truck tipper," which this Court has already resolved.

### III. Logistec's Motion in Limine to Exclude any Argument or Commentary by Daewoo that the Agreement Was Subject to a Condition Precedent or Condition Subsequent (Doc. 100)

In addition, Logistec seeks to prevent Daewoo from arguing that the parties' agreement was subject to a condition precedent or condition subsequent. (Doc. 100, p. 1.) According to Logistec, Daewoo pled affirmative defenses under O.C.G.A. § 13-5-8, which pertains to the nonoccurrence of a condition as an excuse for nonperformance, but sent conflicting signals in the Pretrial Order as to whether it intends to maintain such defenses at trial. (Id. at p. 2.)[4] Logistec states that, in any event, any argument to this end should be excluded as irrelevant and

---

[4]  In a footnote of its Motion, Logistec also "moves this Court for an Order striking Daewoo's Seventh and Ninth Affirmative Defenses . . . since such Defenses have no foundation under Georgia law to the extent they are asserted based on the alleged existence of conditions, and their assertion or use at trial would be inconsistent with the Pretrial Order." (Doc. 100, p. 1.)  A motion in limine is not the proper vehicle for such a request, and, therefore, Logistec's request is **DENIED** as not properly before the Court.

prejudicial under Federal Rules of Evidence 402 and 403, because the parties' agreement was not, in fact, subject to a condition precedent or condition subsequent as contemplated under Georgia law. (Id. at pp. 3–10.) In its Response, Daewoo agrees that the agreement is not subject to any condition and explains that its citation to O.C.G.A. § 13-5-8 appears only in its seventh affirmative defense and is based upon the language in the statute dealing with the insufficiency or failure of consideration. (Doc. 115, pp. 1, 3.)

As stated at the hearing, because Daewoo represents that it does not intend to argue at trial that the parties' agreement was subject to a condition precedent or subsequent, Logistec's Motion is **GRANTED as unopposed**. Any argument or evidence concerning a condition precedent or condition subsequent will not be admissible at trial.

## IV. Logistec's Motion in Limine to Exclude Impermissibly Disclosed Documents and Similar Evidence Relating to Daewoo's Woodchip Procurement Costs, Analyses and Financial Losses It Sustained Following Its Termination of the Agreement (Doc. 101)

At the hearing, the Court took this Motion under advisement. Logistec's Motion sets forth the following timeline: from June to December 2013, Logistec served Daewoo with discovery requests, and deposed its representatives, concerning Daewoo's asserted reason for terminating the agreement; in January 2014, the discovery period closed; in September 2014, this Court issued an Order on the parties' cross motions for summary judgment; and in November 2014, the parties submitted their proposed Joint Pretrial Order. (Doc. 101, pp. 3–4.) Logistec further states that months later, in March and April 2015, Daewoo produced numerous documents, the majority of which existed prior to the discovery deadline and relate to Daewoo's business in Jacksonville, Florida, following its termination of the agreement with Logistec. (Id. at pp. 6–7.) Logistec describes the documents as follows:

log sale agreements, woodchip supply agreements, vessel agreements and amendments, supply and management agreements, procurement invoices, procurement cost analyses, bills of ladings, wire payment transaction reports, cost comparison reports between Brunswick and Jacksonville, business loss evaluation reports due to port relocation, payment requests, email correspondences regarding Daewoo's Turkish customer's procurement, monetary transfer documents, Keystone Terminals' summaries of loading procedures, letters exchanged among Daewoo International, Daewoo America and Forest2Market regarding pine pulpwood pricing, Forest2Market procurement costs analyses prepared for Daewoo, "stumpage analysis [Daewoo America] requested for the Brunswick, GA area . . . for Q3 2012 through Q3 2014," and a Master Analytics Services Agreement between Forest2Market and Daewoo America.

(Id.) Logistec reasons that the subject of Daewoo's costs following its termination of its agreement with Logistec—and any evidence, including these documents, to that end—are inadmissible under Federal Rules of Evidence 401 and 402 as irrelevant to any claim or defense, including the issue of whether Daewoo's excuse for terminating the agreement was contrived. (Id. at pp. 10–11.) Further, Logistec contends that the documents produced in March and April 2015 should be excluded from evidence as untimely supplemental disclosures and expert witness reports under Federal Rules of Civil Procedure 26(a)(2) and 37(c)(1), the admission of which would be unfairly prejudicial to Logistec under Federal Rule of Evidence 403. (Id. at pp. 11–12.)

In its Response, Daewoo maintains that its costs of doing business in Jacksonville, Florida, are relevant and admissible to rebut Logistec's allegation of contrived excuse, in that they demonstrate that the market conditions and woodchip prices were not more favorable in that location than in Brunswick. (Doc. 110, pp. 9–10.) In addition, Daewoo explains its late disclosure of these documents by alleging that Logistec untimely clarified its theory of a "contrived excused" and failed to produce any documents in support thereof. (Id. at pp. 2–3, 10–11.) Daewoo further asserts that the documents Logistec categorizes as expert witness reports—

namely, the Forest2Market reports—are admissible without an expert as market reports generally relied upon in the wood products industry or, alternatively, as business records. (Id. at p. 15 (citing Fed. R. Evid. 803(6), (17)).)

As stated on the record at the hearing, Daewoo has been aware of Logistec's contrived excuse allegation since even before this litigation started. (See Docs. 98-43, pp. 6, 8.) In addition, Logistec has stayed by this allegation throughout the litigation. (See, e.g., Doc. 1, ¶ 18; Doc. 46, p. 3 n.3; Doc. 114-3, p. 5.) Logistec has consistently contended that Daewoo terminated the parties' agreement due to more favorable market conditions in Jacksonville. As Daewoo admitted at the hearing, Logistec articulated its basis for alleging contrived excuse at least as early as its Motion for Summary Judgment dated January 31, 2014. (See Doc. 60, p. 10 n.10 ("Importantly, at the time of anticipated delivery of [w]oodchips to Logistec under the Agreement, [Daewoo] made the unexpected discovery of more favorable [w]oodchip market conditions in Jacksonville, Florida[,] and decided to rely upon a contrived excuse regarding the purported insufficiency of Logistec's truck tipper as a way of avoiding its contractual obligation to deliver [w]oodchips to Logistec's facility where [w]oodchip supply pricing in Georgia was significantly higher than in Florida.").) Even assuming, arguendo, that Daewoo first learned of Logistec's contrived excuse argument on January 31, 2014, Daewoo waited over one year, until March and April 2015, to produce the documents that it intends to use to rebut that argument.

It is against this backdrop that the Court undertakes to resolve the issue, taken under advisement following the hearing, of whether Daewoo may offer argument and evidence concerning its purported costs in Jacksonville, Florida, following termination of the parties' agreement. The Court will address this matter generally before discussing Daewoo's untimely disclosed documents and Forest2Market reports in turn.

**1. Argument and Evidence Concerning Daewoo's Costs in Jacksonville, Florida**

As a general matter, and subject to the exceptions in Subparts IV.2 and IV.3 below, the subject of Daewoo's actual costs incurred in Jacksonville, Florida, following the termination of the agreement is relevant and will be admissible at trial. Daewoo's actual costs are relevant in that they would tend to make Logistec's allegation of contrived excuse, a contested issue in this case, at least somewhat more or less probable. See Fed. R. Evid. 401. That is, evidence of the market conditions in Jacksonville, Florida, and specifically what Daewoo actually paid to ship woodchips from that location, would shed some light on whether Daewoo may have sought to abandon its efforts in Brunswick to obtain more favorable prices in Jacksonville. Thus, Logistec's Motion is **DENIED**, to the extent that Daewoo will be permitted to offer argument concerning its costs in Jacksonville as well as testimony on this issue from timely disclosed witnesses and timely disclosed documentary evidence. See Fed. R. Civ. P. 402.

**2. Untimely Disclosed Documents (Doc. 101-11)**

Nevertheless, Daewoo's untimely disclosed documents and correspondences will not be admissible as evidence at trial. As noted above, relevant evidence is admissible unless some constitutional, statutory, or other rule provides otherwise, Fed. R. Evid. 402. Additionally, Federal Rules of Civil Procedure 26 and 37 provide that any information or witness not properly disclosed cannot be used to supply evidence at trial, unless the failure to disclose was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1); see also Fed. R. Civ. P. 26(a)(2)(e), (e)(1)(A).

Daewoo fails to demonstrate any substantial justification for withholding these documents from discovery until spring 2015. The documents have been in Daewoo's possession and control all along and directly relate to its dealings in Jacksonville, Florida, yet Daewoo

neglected to disclose these documents despite having notice that Logistec's contrived excused allegation concerned the market conditions in Jacksonville, Florida. Even accepting Daewoo's contention that Logistec failed to provide adequate notice of this allegation until January 31, 2014, Daewoo did not promptly disclose the documents at that time, or even shortly thereafter, and instead delayed production until spring 2015. Although Daewoo's counsel, at the hearing, attributed the delay to the volume of documents and the time required to review the same, having reviewed the contested documents closely, the Court is not convinced that it could reasonably take over one year to locate the most basic, fundamental documents from the transaction in Jacksonville, Florida—namely, the log sale agreements, woodchip supply agreements, vessel agreements, invoices, and bills of lading ultimately disclosed to Logistec.

Nor does Daewoo show that its use of the untimely disclosed documents would be harmless to Logistec. In fact, at the hearing, Daewoo's counsel did not dispute Logistec's contention that the admission of these documents would require significant additional discovery in this case. It is unclear what some of the documents are, and some documents appear to be wholly unrelated to Daewoo's woodchip procurement costs or even its business in Jacksonville, Florida. (See, e.g., Doc. 101-11, pp. 59–61, 79–80, 87–92.) Furthermore, at least one of the documents—which contains a cost comparison between Brunswick, Georgia, and Jacksonville, Florida—is undated and does not indicate its author or creator. (Id. at pp. 74–75.) If the Court were to find these documents to be admissible, Logistec would need to determine who to depose for each document and, upon doing so, conduct depositions, and any follow-up discovery, regarding the nature, creation, and contents of each document. Given that less than two months remain before the scheduled trial of this case, the burden and expense of such extensive discovery not only would significantly prejudice Logistec in the preparation of its case but also

would threaten to delay the resolution of this matter.  Under such circumstances, the introduction of Daewoo's untimely disclosures cannot fairly be classified as harmless.

Because Daewoo has not carried its burden of demonstrating a substantial justification or harmlessness, Daewoo cannot rely on the untimely disclosed documents at trial.  Accordingly, Logistec's Motion is **GRANTED**, in that these documents must be excluded from evidence at trial.

### 3.   Untimely Disclosed Forest2Market Reports (Docs. 101-2, 101-7, 101-8, 101-12)

Similarly, Daewoo's untimely disclosed Forest2Market reports will not be admissible into evidence at trial.  Because Daewoo produced the Forest2Market reports even later than the other untimely disclosed documents, Federal Rules of Civil Procedure 26 and 37 mandate their exclusion for the same reasons discussed at length in Subpart IV.2.  However, unlike the other untimely disclosures, the Forest2Market reports raise additional concerns regarding expert opinion and, therefore, warrant particular attention.

As mentioned previously, Rule 26 requires a party to disclose the identity of any expert witness it may use at trial, along with a written report from such expert, by the deadline set forth by court order and to supplement its expert witness disclosures in a timely manner.  Fed. R. Civ. P. 26(a)(2)(A)–(B), (D)–(E).  Pursuant to the Scheduling Order in this case, the deadline for Daewoo to serve its expert witness disclosures and reports was October 15, 2013 (Doc. 35, p. 1), and the discovery period ended on January 2, 2014 (Doc. 19, p. 1).

Daewoo does not dispute that it never identified any expert witness from Forest2Market and that it produced the Forest2Market reports long after the deadline for expert witness reports, and even the discovery deadline.  Rather, Daewoo maintains that the Forest2Market reports are admissible without an expert, as market reports generally relied upon in the field or,

alternatively, as business records. (Doc. 110, p. 15 (citing Fed. R. Evid. 803(6), (17)).) However, the Forest2Market reports themselves do not support Daewoo's assertion.

First, the Forest2Market reports are dated August 11, 2013; February 3, 2014; and January 7, 2015—not only well after Daewoo terminated the agreement, but also after this litigation commenced, and even after the close of discovery. (Doc. 101-2, p. 3; Doc. 101-7, p. 3; Doc. 101-12, p. 11). Second, these reports were generated in response to Daewoo's requests for expert analysis. (Doc. 101-7, p. 6 ("Daewoo . . . engaged Forest2Market to provide analysis and expert opinion of the sustainability of pine pulpwood supply to its pine primary chip exports out of Florida's Port of Jacksonville."); see also Doc. 101-12, p. 3 (showing another stumpage analysis performed by Forest2Market, "The Wood & Fiber Supply Chain Experts," in response to Daewoo America's request).) Third, in performing Daewoo's requested analyses, Forest2Market had to look beyond the data widely available to other industry participants subscribing to its database, and run specialized comparisons, directly contact references, and conduct online research. (See Doc. 101-7, p. 6.) In these ways, the Forest2Market reports, on their face, appear to be expert reports generated specifically for Daewoo long after this litigation commenced and, as such, would not be admissible without expert testimony. See Fed. R. Evid. 702, 802.

Additionally, Daewoo has offered no support for its argument that these documents fall within the cited hearsay exceptions. As to Daewoo's business records argument, these reports do not appear to have been made at or near the time of the events they purport to document as required by Federal Rule of Evidence 803(6)(A) and instead include retrospective analyses of market conditions, in some cases dating back years. (See, e.g., Doc. 101-12, pp. 3–4.) Indeed, Daewoo intends to offer these reports as evidence of market conditions at the time it terminated

the agreement with Logistec, even though the reports were prepared long after the termination. Additionally, there is no indication that these records were kept in the course of Daewoo's regularly conducted business activity or that making these reports was a regular practice of that activity. Fed. R. Evid. 803(6)(B)–(C). Furthermore, the business record exception to the hearsay rule does not override the rules governing opinion testimony. Van Der AA Invs., Inc. v. C.I.R., 125 T.C. 1, 6 (2005) (citing Forward Commc'ns Corp. v. United States, 608 F.2d 485, 510 (Ct. Cl. 1979)) ("If Fed. R. Evid. 803(6) were deemed to override the rules governing opinion testimony, it would allow the introduction of opinion testimony by lay witnesses in the form of a report as to scientific, technical, or other specialized matters and would allow an expert to express his opinion in a report without being subject to cross-examination on the facts and data underlying that opinion.").

Daewoo's argument that the Forest2Market documents are market reports generally relied upon by the public or by persons in particular occupations under Federal Rule of Evidence 803(17) is equally unavailing. These reports appear to have been prepared solely for Daewoo's use. Indeed, the agreement between Forest2Market and Daewoo regarding the preparation of the reports includes a confidentiality provision. (Doc. 101-12, pp. 5–6.) Moreover, Forest2Market included the notation "Business Confidential" on the reports, and these reports have been filed under seal pursuant to a protective order in this case. (See, e.g., Doc. 101-7.)

Furthermore, a ruling that Daewoo's Forest2Market reports are admissible despite noncompliance with Rule 26 would unfairly prejudice Logistec. Logistec would need leave to depose the authors of the Forest2Market reports about the information contained therein and likely would seek to designate a rebuttal expert—both of which are not feasible in the time

remaining before trial.  Accordingly, Daewoo's untimely disclosed Forest2Market reports must be excluded from evidence for these additional reasons.  Insofar as Logistec seeks to exclude these documents as untimely expert reports, Logistec's Motion is **GRANTED**.

### V.    Daewoo's Motion in Limine Regarding Logistec's Trial Exhibits (Doc. 103)

Finally, Daewoo moves the Court to exclude certain items appearing on Logistec's Trial Exhibit List, citing various Federal Rules of Civil Procedure, Federal Rules of Evidence, and portions of Georgia law in support.  (See generally Doc. 103.)  Importantly, Daewoo does not seek to exclude Exhibits 51, 52, and 61 in their entirety.  (See id. at pp. 6–7.)  Rather, Daewoo asks that Exhibit 51 be redacted to exclude language referring to settlement negotiations, and that Logistec rename Exhibits 52 and 61 on the Trial Exhibits List so as not to include the term "truck tipper."  (Id.)  Logistec's Response opposes each of these requests, insisting on the admissibility of the exhibits in their entirety (see generally Doc. 114), to which Daewoo has filed a Reply largely reiterating the arguments set forth in its Motion (see generally Doc. 121).  The Court rules as follows:

#### 1.    Exhibit 5: Guarantee Instrument

For the reasons stated on the record at the hearing, Daewoo's Motion as to Exhibit 5 is **GRANTED**.  Logistec may not offer the guarantee instrument as evidence in its case-in-chief.  However, as mentioned at the hearing, if Logistec believes at trial that this evidence has become relevant for rebuttal, Logistec may raise the issue to the Court at that time.

#### 2.    Exhibit 23: Unsigned Agreement

For the reasons stated on the record at the hearing, Daewoo's Motion in this regard is **DENIED without prejudice** in that the Court declines to rule on the admissibility of the unsigned agreement at this time.  Should Logistec seek to put up this evidence at trial, Logistec

must lay the proper foundation, and Daewoo may revisit its objections to admissibility, at that time.

### 3. Exhibits 28, 29, 30, 34, 36, 39, 40, and 49: Documents to Support Logistec's Allegation of Contrived Excuse

Daewoo's counsel represented at the hearing that Daewoo produced each of the documents in these exhibits to Logistec during the discovery period. Based on this representation, the reasons stated on the record at the hearing, and the Court's finding in Subpart I.4 as to the admissibility of the Megahan-Daewoo America contract, this portion of Daewoo's Motion is **GRANTED in part** and **DENIED in part**. The Motion is **DENIED** in that these exhibits relating to contrived excuse are relevant and will be admissible at trial. The Motion is **GRANTED** in that Logistec is **ORDERED** to rename Exhibit 28, the Megahan-Daewoo America contract, to refer specifically to Daewoo America rather than "Daewoo."

### 4. Exhibits 32, 33, 35, 37, and 38: Additional Documents to Support Logistec's Allegation of Contrived Excuse

Daewoo's counsel represented at the hearing that Daewoo produced each of the documents in these exhibits to Logistec during the discovery period. Based on this representation, and for the reasons stated on the record at the hearing, Daewoo's Motion to exclude these documents is **DENIED**. These exhibits are relevant and admissible.

### 5. Exhibit 51: Unredacted Termination Letter

For the reasons stated on the record at the hearing, and consistent with the Court's ruling as to this letter in Subpart I.1, this portion of Daewoo's Motion is **GRANTED**. Logistec is hereby **ORDERED** to redact the language, "by March 17, 2013 (90 days from our December 17, 2012 letter to Ingrid Stefancic)" from its Trial Exhibit 51. (See Doc. 103-6.)

6. **Exhibits 52 and 61: "Logistec Truck Tipper Testing Records" and "Demonstrative Video of Truck Tipper Testing in 2013"**

For the reasons stated on the record at the hearing, Daewoo's Motion as to Exhibits 52 and 61 is **GRANTED**. Logistec is hereby **ORDERED** to rename these exhibits such that the term "truck tipper" does not appear therein.

7. **Exhibits 62, 63, 64, 65, 66, and 67: Sworn Statements and Demonstrative Aids**

For the reasons stated on the record at the hearing, Daewoo's Motion is **DENIED** in that the Court declines to strike any of these exhibits at this time. As instructed at the hearing, Exhibits 62, 63, 64, 65, and 66, which contain sworn statements of witnesses who may testify at trial, may be relevant and admissible for impeachment purposes only. Exhibit 67, a general catch-all for demonstrative aids, may remain on Logistec's Trial Exhibit List with the understanding that any demonstrative aid presented at trial must depict only matters already admitted into evidence and cannot introduce any new material. In addition, the parties are expected to work together on exchanging demonstrative aids at a time permitting adequate review prior to trial.

**SO ORDERED**, this 17th day of June, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA